**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC., and EAGLE SUB1 LLC<br><br>Plaintiffs,<br><br>v.<br><br>APOTEX INC., and APOTEX CORP.,<br><br>Defendants. | C.A. No. 25-74-JLH<br><br>**JURY TRIAL DEMANDED** |
| EAGLE PHARMACEUTICALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC.,<br><br>Defendants. | C.A. No. 25-75-JLH<br><br>**JURY TRIAL DEMANDED** |
| EAGLE PHARMACEUTICALS, INC., and EAGLE SUB1 LLC<br><br>Plaintiffs,<br><br>v.<br><br>BAXTER HEALTHCARE CORPORATION,<br><br>Defendant. | C.A. No. 25-79-JLH<br><br>**JURY TRIAL DEMANDED** |

**JOINT LETTER TO THE HONORABLE JENNIFER L. HALL FROM THE PARTIES
REGARDING PROPOSED SCHEDULING ORDER AND RELATED DISPUTES**

Dear Judge Hall:

Pursuant to the Court's Oral Orders in the above-captioned actions (D.I. 11 in C.A. No. 25-74-JLH; D.I. 15 in C.A. No. 25-75-JLH; D.I. 8 in C.A. No. 25-79-JLH), we write jointly on behalf of the parties regarding the proposed scheduling order. The parties agree that these three cases—which all involve claims of infringement and invalidity regarding U.S. Patent No. 12,138,248 (the "'248 patent")—should be coordinated with each other (collectively, these cases are referred to as the "'248 Patent Actions"). However, the parties disagree as to whether the '248 Patent Actions should be coordinated and/or consolidated with the related patent infringement actions pending before this Court between these parties, *i.e.,* Civil Action Nos. 24-64-JLH, 24-65-JLH, and 24-66-JLH (the "Related Actions"). This is a threshold dispute which has prevented the parties from reaching agreement on dates for the proposed scheduling order in the '248 Patent Actions.

Eagle's proposed scheduling order is attached as **Exhibit A**. Slayback and Apotex's[1] proposed scheduling order is attached as **Exhibit B**. The parties' positions are set forth below.

**Eagle's Position:**

Defendants insisted on each presenting 1.5 pages of argument, over Eagle's objection, so in fairness, Eagle has responded to each Defendant's position statement with its own short position statement.

Eagle originally filed the Related Actions (1) Civil Action No. 24-64 against Apotex; (2) Civil Action No. 24-65 against Slayback; and (3) Civil Action No. 24-66 against Baxter, which all involve claims of infringement and invalidity with respect to Eagle's United States Patent Nos. 11,844,783 (the "'783 patent") and 11,872,214 (the "'214 patent"), and concern Defendants' respective bendamustine products. The Related Actions were coordinated for scheduling purposes by the Court. Eagle subsequently filed the above-captioned '248 Patent Actions against the same defendant groups, concerning Defendants' same bendamustine products. There is no dispute that the '248 Patent Actions and the Related Actions involve the same parties, same drug products, and common issues of law and fact. As such, the only path the leads to the "just, speedy and inexpensive determination" of the '248 Patent Actions is consolidation. Fed. R. Civ. P. 1.

Eagle's proposed scheduling order (attached hereto as **Exhibit A**) streamlines case management by consolidating the respective cases against each of Apotex, Slayback, and Baxter (so that there are only 3 active dockets instead of 6), and coordinates the cases (with only slight modifications) to align the case schedule and maintain the current trial dates that were set by the Court in the Related Actions. Defendants apparently resist consolidation and/or coordination on two bases: (1) the '248 Patent Actions were later filed; and (2) unfounded fears of future asserted patents.

First, the fact the '248 Patent Actions were later filed is of no consequence. Parties regularly agree, and the Court regularly orders, later-filed cases to proceed under the same schedule when the core issues overlap. Indeed, Defendants agreed to coordination and consolidation when parties first met and conferred on April 16, 2025. The only reason Defendants provided for refusing to agree

---

[1] For the reasons explained below, Baxter believes that the '248 Patent Actions should be stayed.

1

to a stipulation regarding consolidation at that time was tied to Defendants demand that Eagle narrow the scope of the case. Accordingly, Eagle made proposals for case narrowing, but Defendants declined to engage. A month later, *all three* Defendants did an about face, reneging on their prior agreement to consolidate *without any explanation*. Even today, prior to parties' initial exchange, Eagle was unclear on how Defendants' positions differ from Eagle's or each other's while Eagle has always been clear about its position regarding coordination and consolidation.

Second, Defendants' assertion that Eagle will continue asserting patents is unfounded and purely speculative. The patents Eagle has asserted are the '783 patent, the '214 patent, and the '248 patent—those are the patents the parties and the Court must deal with today. If future patents issue and are asserted, ***Eagle represents to this Court, as it did to Defendants, that it will not seek to consolidate them into the Related Actions and the existing trial dates***. There is no reason to prematurely try and resolve the issue of future patents (which may never come to be) that is not presently before the Court.

Given that the '248 Patent Actions and the Related Actions will present overlapping facts, witnesses, and legal issues, consolidation of the '248 Patent Actions into the Related Actions and coordination of the case schedule would economize discovery, conserve resources, and ensure consistent treatment of overlapping subject matter. In addition, Defendants' proposal for multiple jury trials against each Defendant, based on the same accused products and with the same evidence would be an inefficient use of the Court's, the juries', and the parties' resources in contravention of Fed. R. Civ. P. 1.

Additionally, the consolidation and coordination of these actions would not prejudice any party. All of the cases remain in their early stages, fact discovery is still on going, no depositions have been taken, and they can all be tried together under Eagle's proposed schedule—which maintains all deadlines already in place in the Related Actions, but builds in deadlines for initial contentions to account for the '248 patent.

Apotex, Slayback, and Baxter's three different positions—presented for the first time today—do not alter the foregoing. First, Eagle objects to Defendants self-serving and inaccurate "background statement" for which there is no basis to include in this joint submission regarding the scheduling order, in clear violation of Judge Hall's standing order and procedures. Eagle will not waste the Court's time with a similar statement, but feels it is important to note that the prior case was decided on a technicality by the disclosure-dedication doctrine with Federal Circuit holding that "by disclosing, but not claiming, ethanol" Eagle had dedicated it to the public. *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1177 (Fed. Cir. 2020). The suggested remedy for "disclosing, but not claiming" being to go back and claim ethanol in a pending application, should one exist. Eagle did just that, which is why, as Defendants point out, little else has changed, except that now Defendants infringe the claims that recite ethanol as a pharmaceutically acceptable fluid. Defendants make a whole hullabaloo about Eagle availing itself of its constitutional right to assert patents against Defendants to prevent future infringement and recover damages. 35 U.S.C. § 271. There is nothing improper about this action, and notably, Defendants have never succeeded in invalidating a single Eagle patent. Regardless, the issue of alleged "future patents" is complete speculation as explained above and Eagle already obviated any such issue by agreeing that it would

not seek to consolidate any future patents into the Related Actions and the current trial dates. Defendants' positions, divergent as they may be, agree on one thing—the changes in the claims between the '248 patent and the '783 and '214 patents asserted in the Related actions—are "extremely minor" so consolidation is warranted.

**Eagle's Response to Apotex's Position**: Eagle's proposal to consolidate the '248 patent and no other future issuing patents alleviates any unfounded concern by Apotex of "multiple jury trials" on the same subject matter. Curiously, Apotex's proposed plan to bifurcate infringement/invalidity (Phase I) and damages/willfulness (Phase II) would do the opposite, forcing the parties to go to trial twice, empanel a jury twice, and be an extremely inefficient use of the Court's, the jurors', and the parties' resources. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1314 (Fed. Cir. 2013) (holding juries must "determine patent damages"); *Cordance Corp. v. Amazon.com, Inc.*, 696 F. Supp. 2d 445, 447 (D. Del. 2010) (confirming "separate jury trial on damages"). It also prejudices Eagle by denying it a speedy resolution on all issues and would force Eagle to present its case piecemeal to the jury. Apotex's only asserted "efficiency" is the notion that if it should somehow prevail on "non-infringement," then a second trial would be unnecessary. But there would be no need for a second trial under the existing schedule, and "bifurcation in patent cases is generally disfavored and is the exception, not the rule" as "a single trial will best serve the other considerations identified in Rule 42(b), namely expedition, economy, and convenience." *See Abbott Lab'ys v. Teva Pharms. USA, Inc.*, No. 02-1512-KAJ, 2005 WL 6225546, at *3 (D. Del. May 6, 2005); *see also Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161, 184 (M.D. Pa. 2019) ("Bifurcation is disfavored in the Third Circuit."); *Sweigart v. Voyager Trucking Corp.*, No. 23-2397, 2024 WL 3565306 at *3 (3d. Cir. Jul. 29, 2024) ("Bifurcating a trial into separate liability and damages sections is the exception, not the rule."). Apotex's request herein to bifurcate also fails procedurally because Apotex never sought a meet and confer with Eagle on this issue prior to raising it here which violates Delaware Local Rule 7.1.1. *See 10x Genomics, Inc. v. Curio Biosciences, Inc.*, No. 23-1375-MN, 2025 WL 326752, at *11 (D. Del. Jan. 29, 2025), *report and recommendation adopted*, 2025 WL 580320 (D. Del. Feb. 21, 2025). The two cases Apotex cites that approved bifurcation have completely different procedural and factual scenarios. In *Board of Regents*, the court granted bifurcation *after* denying parties summary judgment motions in a case that has been ongoing , when it was clear there would be no overlap between the liability and damages phases in terms of identified witness and case themes. *Board of Regents The University of Texas System et al v. Boston Scientific Corporation*, C.A. 18-392, D.I. 260 (D. Del. Dec. 2, 2022). The same cannot be said here where parties are still in fact discovery, no depositions have been taken, summary judgment has not occurred, and the determination of what issues will actually be presented at trial is unknown. Apotex's citation to *IOENGINE* fairs no better because again, bifurcation was decided *after* Daubert motions which resulted in exclusion of plaintiff's damages expert which necessitated further briefing and supported bifurcation *at that time*. *IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. 18-452WCB, D.I. 528 (consolidated) (D. Del. Jun. 23, 2022). It is both premature and unnecessary to consider bifurcation at this time.

Further, Apotex's assertion that the '248 patent makes "extremely minor changes" to the patents asserted in the Related Actions belies its suggestion that fact discovery be extended by ***6 months*** to accommodate the '248 patent. As Apotex concedes, the '248 patent does not raise new issues that would require additional document production or depositions beyond those already noticed. As such, the addition of the '248 patent to the Related Actions *by itself and Defendants own*

3

*admission* does not provide any basis for extending the case schedule in the related actions. Eagle also notes that any delay Apotex anticipates in timely completing fact discovery are the result of Apotex's repeated and unwarranted own delays. Indeed, Apotex waiting more than 11 months to engage in discovery. Should the parties need to extend the case schedule in the Related Actions, they can have a proper meet and confer to discuss that issue and address any scheduling issues that may arise at the appropriate time. Apotex's position is also undercut by its co-Defendant Baxter who agrees with Eagle that no schedule extension is needed.

Finally, both Apotex's and Slayback's position rely on pure speculation that Eagle's allowed '329 application will ever issue or be asserted against them. Eagle stands by its representation to Defendants and this Court that *if* the '329 application issues, and *if* Eagle chooses to assert it, Eagle *will not* seek to consolidate it into the Related Actions with the current trial dates.

**Eagle's Response to Slayback's Position**: Eagle incorporates its response to Apotex as part of its response to Slayback's position, which is much the same other than the request for bifurcation. As explained above, any adjustment to the schedule in the Related Actions would be premature and certainly not warranted by the consolidation of the '248 Patent Action. Slayback raises *for the first time* in its submission that its lead trial attorney has reduced capacity and that one of its existing experts is no longer able to serve. While Eagle is sympathetic to such issues, Slayback has not raised them in the Related Actions and those issues have no bearing on how the '248 Patent Actions should proceed given the "extremely minor" differences between the claims of the '248 patent and those asserted in the Related Actions. Moreover, Slayback is represented by a large law firm and it appears Slayback recently brought in another senior litigator to assist in the interim.

Further, similar to Apotex, Slayback has spent months refusing to engage in discovery. Slayback should not be allowed to use the '248 Patent Actions as a pretext for an unwarranted extension to the Related Actions to compensate for its inexcusable delays throughout discovery. Any extension to the case schedule in the Related Actions will be highly prejudicial to Eagle by delaying its day in Court while Defendants continue to sell infringing products causing damage to Eagle.

**Eagle's Response to Baxter's Position**: Baxter's new founded opposition to consolidation, which it originally agreed to, is illogical, inefficient, and unsupported. First, Baxter's request to stay is procedurally improper. To the extent Baxter seeks a stay, it should file a motion to stay in accordance with the Local Rules and this Court's form Scheduling Order.

Second, briefly on the merits, Baxter's requested relief of a stay is contrary to its stated reason for seeking such relief (i.e. efficiency). Baxter does not deny that the '248 patent will present overlapping facts, witnesses, and legal issues with the existing Related Actions. There is plenty of time in the current schedule in the Related Actions to get the '248 Patent Actions up to speed, and Baxter does not contend otherwise—indeed, the parties are still in the midst of fact discovery and no depositions have been taken in the earlier-filed actions. Despite that, Baxter apparently seeks to stall the '248 Patent Action entirely, risking serial rounds of discovery and multiple trials on substantially overlapping issues. It appears, like Defendants' argued in their discovery motion, that Baxter would like to preserve its ability to seek duplicative discovery in the '248 Patent Actions and further inconvenience third-party witnesses with serial, duplicative examinations. Moreover, Baxter's assertion that "Eagle will continue to obtain patents with minor, immaterial changes, and

assert them in serial cases" is both wrong and unfounded. While Eagle does not waive its rights to assert future patents against these defendants as may be warranted, that is not an issue before the Court today, and a stay of the '248 Patent Actions at this time not does not eliminate that possibility – it just delays the just and speedy resolutions of patents that are currently asserted and before the Court. Finally, Eagle has already represented that it will not seek to consolidate further patents with this action and the existing trial date. Given the early stage of the Related Actions there is no reason not to consolidate the '248 patent to avoid multiple trials on the same issues.

All parties agree that the '248 Patent Actions have common issues of law and fact. No Defendant argues the '248 patent presents new issues necessitating delay to the schedule in the Related Actions. Accordingly, Eagle respectfully requests that the Court enter its proposed scheduling order (**Exhibit A**).

**Defendants' Position:**

Apotex, Baxter, and Slayback ("Defendants") respectfully submit this letter to address a case management dispute that has arisen between the parties—even after several meet and confers with each other and Plaintiff—with respect to whether each of Defendants' respective 2025 matters (C.A. 25-74, 25-75, and 25-79) (collectively, the "2025 Actions") should be consolidated with each Defendant's corresponding 2024 matter (C.A. 24-64, 24-65, and 24-66) (collectively, the "2024 Actions").

Each Defendant provides its position on case management below. Because scheduling potentially impacts not only the three 2025 Actions subject to this Court's directive but the three 2024 Actions (pending since January 2024), Defendants respectfully request a conference with the Court to address the issues raised in this letter.

- **Apotex Position:** Coordinate all cases (2024 case, 2025 case, future '329 application case) for fact discovery, which is extended ~ 6 months. Bifurcate liability (infringement/validity) from damages/willfulness on all patents for expert discovery and trial.
- **Baxter Position:** Stay the 2025 Actions and all further actions until completion of the 2024 Actions
- **Slayback Position:** Coordinate all cases (2024 case, 2025 case, future '329 application case) for pre-trial discovery, which is extended ~ 6 months. No bifurcation at this time.

Joint Background Statement. Eagle has created massive inefficiencies, embroiling this Court and Defendants in serial patent litigation by taking a singular utility patent application filed on January 28, ***2011***, filing an unending stream of continuation applications in *ex parte* patent prosecution to obtain multiple overlapping patents,[2] and now serially asserting them. Eagle has filed at least ***sixteen*** cases asserting patents that claim priority to the ultimate parent of the asserted patents. And dating back to August 2021, this is at least the third patent litigation between Eagle and

---

[2] While Defendants focus on those patents asserted by Eagle, they also had to deal with several other patents that were listed in the Orange Book by Eagle necessitating P-IV certifications and notice letters, all of which stem from the same priority application at issue in the later-filed cases.

5

Defendants[3] concerning each Defendant's bendamustine product. In September 2022, Defendants successfully defeated Eagle's first suit and then entered the market with their non-infringing products. *See Eagle Pharm., Inc. v. Slayback Pharma LLC*, 2022 WL 14460937 (D. Del. Oct. 25, 2022), *summarily aff'd*, 2024 WL 163341, No. 23-1110 (Fed. Cir. Jan. 16, 2024); *Eagle Pharm., Inc. v. Celerity Pharm.*, 22-cv-42, D.I. 107 (D. Del. Oct. 28, 2022).

In January 2024, Eagle asserted US Pat. Nos. 11,844,783 (the "'783 Patent") and 11,872,214 (the "'214 Patent") against Defendants. These patents were obtained in December 2023 and January 2024 and are continuations of the same application. Those cases are currently pending and are coordinated for pre-trial purposes only, with fact discovery set to close August 1, 2025 under the existing schedule. (D.I. 34 in C.A. 24-64).

Since filing the 2024 Actions, Eagle has filed four additional liquid bendamustine patent applications, all sharing the same specification and claiming priority to the same 2011 parent application as the '214 and '783 Patents. One of these was allowed in August 2024. Eagle waited 6 weeks to pay the issue fee for that application, which ultimately issued as the '248 patent on November 12, 2024. Eagle, however, waited two more months, until January 17, 2025, to file these actions and then, inexplicably waited until March 2025 before serving them on Defendants. Another—U.S. Pat. App. 18/646,329 (the "'329 Application")—received a notice of allowability on March 18, 2025 and will likely issue imminently. Eagle has managed to secure allowance of additional patents by making extremely minor changes to already-issued claims. For example, compared to Claim 1 of the '214 Patent, the '248 Patent merely replaces the word "vial" with "container," deletes the phrase "about 100 mg of" from the phrase "about 100 mg of bendamustine," and deletes the word "from" from the phrase "*from* about 25 mg/mL." Ex. C ['214 Patent] at Claim 1; Ex. D ['248 Patent] at Claim 1. Likewise, Claim 1 of the soon-to-issue '329 Application changes only a single word from Claim 1 of the '783 Patent: instead of "[a] method of treating *leukemia*," it claims a "method of treating *cancer*." Ex. E ['329 Application] at Claim 1; Ex. F ['783 Patent] at Claim 1.

In the meantime, the 2024 Actions have progressed. The parties have completed claim construction, and this Court held a Markman hearing and issued its Markman order. Fact discovery is set to close in less than three months.

Over the past two months, the parties have met and conferred multiple times attempting to reach a consensus on how to proceed most efficiently through litigating these complex issues. Yet, despite their efforts, the parties have not reached an agreement on a proposed framework. Each Defendant presents their position below.

Apotex Position. Eagle should not be permitted to subject Apotex to serial expensive patent litigation and multiple jury trials on related patents. For the reasons set forth below, Apotex strongly agrees with Slayback that (1) an extension of fact discovery in the 2024 action is needed and (2) the 2024, 2025 current and a future '329 action should all be coordinated together. Apotex further proposes bifurcating the issues of infringement/invalidity (Phase I) from

---

[3] Eagle's 2018 suit against Slayback ended in judgment for Slayback. C.A. No. 18-1953.

damages/willfulness (Phase II) for purposes of expert discovery and trial, but maintaining a single fact discovery period on all issues.

The coordinated '783 and '214 patents in the second suit, the '248 patent in the third suit, and the future '329 application all have the same specification, and all claims include an identical limitation central to Defendants' non-infringement arguments. Specifically, each of the claims in the issued patents and recently allowed application all require "a pharmaceutically acceptable fluid ***consisting of***" certain ingredients that prevent Eagle from establishing infringement. *Eagle Pharm. Inc. v. Apotex Inc. et al.*, 24-cv-64 (D. Del. Feb. 12, 2025), D.I. 113 ("Markman Tr.") at 67:14-25 ("I agree with Defendants, in the abstract, that you can't have in the product another fluid that is a pharmaceutically acceptable fluid that is not on the list and still infringe. . . . I think we all agree that there can't be another solvent system that's not on the list of pharmaceutically acceptable fluids."). While Defendants believe that summary judgment will likely resolve their respective actions, there are currently many different issues across the existing cases. Because each Defendant has already launched their products, in addition to the "normal" Hatch-Waxman litigation issues exist here, namely validity (multiple defenses on each, including 103 and 112), infringement (Defendants' products are not identical) of each asserted patent claim but also substantive issues of standard patent litigation. There is a jury demand, and Eagle is seeking damages (e.g., lost profits, reasonable royalty and price erosion) and asserting willfulness against each Defendant.

The parties still have significant work to do in fact discovery, which closes on August 1, 2025. Among other issues, the parties are presently briefing multiple discovery disputes before Magistrate Judge Burke, and Judge Burke has set a July 7, 2025 hearing date for at least half of those disputes. Judge Burke's resolution of these disputes may require additional ESI searching and document production. In addition, the parties have noticed at least 22 party witness depositions and served 13 subpoenas for third party depositions. The earliest of those notices were served in February, but not a single deposition has been taken yet. Moreover, the only witness for which Eagle has provided a deposition date only arose after a discovery dispute that is still being briefed, see, e.g., D.I. 123 and 129 in C.A. 24-65, and Eagle has subsequently withdrawn that date.

Bifurcation of complex willfulness/damages issues in patent cases is relatively common because they can streamline proceedings and create efficiencies for the Court and parties. *See*, *e.g.*, *Board of Regents, The University of Texas System et al v. Boston Scientific Corporation*, C.A. 18-392, D.I. 260 (D. Del. Dec. 2, 2022) (granting motion to bifurcate willful infringement/damages/induced infringement from infringement/invalidity); *IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. 18-452WCB, D.I. 528 (consolidated) (D. Del. Jun. 23, 2022) (bifurcating liability and damages). Here, it makes eminent sense to bifurcate the issues of infringement/validity from those of damages/willfulness, particularly in the absence of any articulated prejudice to any party. The Court has already expressed its desire address the "consisting of" infringement issue at summary judgment. Markman Tr. at 69:7-8 ("So what we're going to do is we're going to hear what the parties have to say about it at summary judgment."). To the extent Eagle's infringement claims survive, determining this issue, other infringement issues, and all the validity issues across four patents entails significant work for a jury. Further, Apotex's bifurcation proposal achieves significant efficiencies for the jury, the Court and the

parties. Indeed, if Apotex establishes non-infringement (which it has successfully done for all of Eagle's previous Orange Book patents sharing the same specification at issue in the present actions), there would be no need for expert discovery/trial on damages and willfulness at all. If Eagle wins, however, on an earlier issuing patent (*e.g.*, the '783 patent), there would likely be no need to also create and consider extensive damage theories where the infringement coincides with later issued patents.

Like Slayback, Apotex strongly disagrees with Baxter's proposal to stay this action pending the outcome of the trial for 2024 action as that would subject Apotex to the risk of multiple trials on the same underlying activity.

Slayback Position. In view of Eagle's history of serial litigation, Slayback seeks to bring this long-running dispute to an end. To facilitate this goal, Slayback seeks to consolidate this action as well as any action that may be filed on Eagle's newly allowed patent with co-pending C.A. No. 25-75 involving the '248 patent. Slayback further seeks to modify the existing case schedule to accommodates the addition of '248 patent and the soon-to-issue Eagle patent. Slayback believes this approach is the most efficient and will eliminate the need for additional jury trials involving the same product. *See* Exhibit B (proposed amended case schedule for the proposed 4 patent case).

Slayback further believes that the case schedule in C.A. No. 24-65 needs to be adjusted because the parties still have significant work to do in fact discovery as detailed *supra*. It is hard to see how that the parties will be able to complete fact discovery in the three months remaining until the August 1 cut-off. In addition, Slayback's lead trial attorney (who led the teams on Slayback's two prior wins against Eagle) recently had major surgery and will be on reduced work for an extended period of time. Finally, one of Slayback's experts, who has been advising for more than a year recently had a stroke and is no longer able to serve. Thus, Slayback needs additional time to identify and retain a new expert. Because an extension of the existing case schedule is needed, Slayback opposes Eagle's proposal to simply consolidate C.A. No. 24-65 with C.A. No. 25-75 without adjusting the current schedule. Slayback estimates a 6-month extension to allow for the '329 application to issue and be folded into fact discovery. As Apotex points out, efficiencies suggests consolidating the cases and extending the schedule. This is especially true because even with adding a new patent, even with some common issues, suggests an extension of the schedule.

At present, Slayback does not join Apotex's request to bifurcate liability discovery and trial from damages discovery and trial. However, Slayback acknowledges that there may be additional options for stream lining the cases in the future, which could include bifurcation or perhaps joint trials. Slayback also does not join Baxter's proposal to stay this action pending the outcome of the trial for C.A. No. 24-65. Slayback believes that Baxter's approach will result in an increased burden on the parties and the Court and will still leave additional patents to be tried.

Baxter Position. Like Apotex and Slayback, Baxter also seeks to end Eagle's decade-long campaign to control the market for bendamustine—a compound first synthesized in the 1960s. Baxter, however, opposes consolidation of the 2025 Actions and the '248 Patent into the 2024 Actions because consolidation will not bring the promised efficiencies. Eagle will continue to obtain patents with minor, immaterial changes, and assert them in serial cases. Eagle does not deny it. During the parties' May 12, 2025 meet and confer, counsel could only say that Eagle

could not speak to patents that may issue and be asserted in the future. Eagle represents that it will not add any additional patents to a consolidated case, but that ignores the imminent issuance of additional patents, which negates any efficiencies that would be gained from consolidation. New patents will issue and new cases will be filed every few months, recreating the same inefficiencies.

Eagle's litigation history makes additional cases highly likely: as noted above, Eagle's past litigation losses did not deter Eagle's current campaign. And as explained above, Eagle delayed filing and serving the 2025 Actions asserting the '248 Patent. If Eagle wanted to consolidate these actions, it should have acted promptly to file and serve its complaint when the '248 Patent issued, rather than waiting multiple months.[4]

To prevent endless litigation, it would be most efficient for the 2024 Actions to proceed on its current schedule—with only the '214 and '783 Patents. Baxter is confident in its non-infringement and invalidity positions and that, as the Court explained at Markman, the asserted claims are "a mess." Markman Tr. 66:6-12 ("I don't think there's a reasonable debate that these claims are a mess[.] It is not counsel in this room's fault that the claims are the way they are, but they are a mess."). Baxter also believes that the parties can complete discovery on the two patents in the existing case on a schedule that does not impact the already scheduled trial dates—the first of which is not set to occur until July 20, 2026.

The efficient course is to hold the 2025 Actions in abeyance pending the outcome of the 2024 Actions and consolidate any subsequent cases into the 2025 Actions. Baxter does not agree with Apotex that this will subject Defendants to multiple trials on related patents. Instead, given the minor differences in claim language, and because all of these patents are terminally disclaimed, Eagle should explain how the outcome of the 2024 Actions would not be fully dispositive of the '248 Patent and any other immaterial claim variations. *See Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) ("If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies."). On the parties' meet and confer, Eagle could not identify any unique issues.

For the foregoing reasons, the Court should not consolidate the 2025 Actions with the 2024 Actions. Instead, the Court should hold these cases in abeyance pending the outcome of the 2024 Actions and consolidate any additional cases Eagle may file into these cases. Baxter respectfully requests the opportunity to more fully brief the propriety of staying these cases, including addressing the traditional stay factors in light of the issues discussed above.

*        *        *

Counsel are available at the Court's convenience should Your Honor have any questions.

---

[4] Eagle insists that fact discovery is in "early stages" because no depositions have occurred, but that is because Eagle has refused to provide deposition dates for its witnesses and pulled the scheduled deposition date for Dr. Buxton, the only inventor of the Patents-in-Suit Eagle contends is available.

9

Dated: May 21, 2025

| | |
|---|---|
| **MCCARTER & ENGLISH, LLP** | **POTTER ANDERSON & CORROON LLP** |
| */s/ Daniel M. Silver* | */s/ Philip A. Rovner* |
| Daniel M. Silver (#4758) | Philip A. Rovner (#3215) |
| Alexandra M. Joyce (#6423) | Andrew M. Moshos (#6685) |
| Maliheh Zare (#7133) | P.O. Box 951 |
| Renaissance Centre | Wilmington, DE 19899 |
| 405 N. King Street, 8th Floor | (302) 984-6000 |
| Wilmington, Delaware 19801 | provner@potteranderson.com |
| (302) 984-6300 | amoshos@potteranderson.com |
| dsilver@mccarter.com | |
| ajoyce@mccarter.com | *Attorneys for Defendant Baxter Healthcare Corporation* |
| mzare@mccarer.com | |
| *Attorneys for Plaintiffs* | |
| **MORRIS JAMES LLP** | **SMITH KATZENSTEIN & JENKINS LLP** |
| */s/ Kenneth L. Dorsney* | */s/ Daniel A. Taylor* |
| Kenneth L. Dorsney (#3726) | Neal C. Belgam (No. 2721) |
| Cortlan S. Hitch (#6720) | Daniel A. Taylor (No. 6934) |
| 500 Delaware Avenue, Suite 1500 | 1000 West Street, Suite 1501 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| (302) 888-6800 | (302) 652-8400 |
| kdorsney@morrisjames.com | nbelgam@skjlaw.com |
| chitch@morrisjames.com | dtaylor@skjlaw.com |
| *Attorneys for Defendants Apotex Inc. and Apotex Corp.* | *Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.* |